UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS NAGLE,

       Plaintiff,                                              Hon. Wendell A. Miles

v.                                                                Case No. 1:05-CV-618

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 57 years of age at the time of the ALJ's decision and 53 years of age as of the date his insured status expired. (Tr. 13, 18, 36). He successfully completed high school and worked previously as a draftsman, bridge inspector, armed guard, security supervisor, salesperson, and machine operator. (Tr. 53-62).

Plaintiff applied for benefits on April 23, 2002, alleging that he had been disabled since September 5, 1997, due to degenerative arthritis in his knees and lower back, as well as degenerative arthritis and osteoarthritis in his right ankle. (Tr. 36-38, 47). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 19-84). On August 19, 2004, Plaintiff appeared before ALJ Earl Witten, with testimony being offered by Plaintiff, Plaintiff's wife, and vocational expert, Sharon Princer. (Tr. 413-56). In a written decision dated March 11, 2005, the ALJ determined that Plaintiff was not disabled. (Tr. 12-18). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on September 30, 2001. (Tr. 12, 39-45); *see also*, 42 U.S.C. § 423(c)(1). Accordingly, to be eligible for Disability Insurance Benefits under Title II

of the Social Security Act, Plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

## **MEDICAL HISTORY**

In 1968, while serving in the United States Army, Plaintiff was accidentally shot in the right ankle by another soldier. (Tr. 211, 272, 417-18). Following this injury, Plaintiff underwent several surgical procedures and subsequently received a medical retirement from the Army. (Tr. 211, 418-19). Plaintiff then returned to his job as a bridge inspector for the City of Detroit. (Tr. 419). In 1989, Plaintiff received an early retirement pension from the City of Detroit. (Tr. 420-21).

In 1984, Plaintiff underwent right ankle fusion surgery. (Tr. 211, 278). In 1992, Plaintiff fell out of a tree stand while hunting and suffered a calcaneous[1] fracture which was treated without surgery. (Tr. 278).

X-rays of Plaintiff's lumbosacral spine, taken on November 4, 1997, revealed "moderate" degenerative changes with no evidence of "bony injury or destructive change." (Tr. 151).

X-rays of Plaintiff's cervical spine, taken on January 18, 2000, revealed disc space narrowing at C4-5, C5-6, and C6-7, extensive spurring throughout, and loss of cervical lordosis. (Tr. 141). The paravertebral soft tissues appeared unremarkable and the vertebral height and alignment were "maintained." *Id.*

---

[1] The calcaneous refers to the heel bone. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* C-8 (Matthew Bender) (1996).

X-rays of Plaintiff's tibia, fibula, and knee, taken on May 4, 2000, were "normal." (Tr. 131). X-rays of Plaintiff's right ankle revealed fusion of the mortise joint, degenerative changes of the talo-calcaneal joint, and "deformity" of the calcaneous, which was "attributed to a healed gun shot wound." (Tr. 128). There was, however, no evidence of osteomyelitis.[2] *Id.* On May 22, 2000, Plaintiff participated in a bone imaging examination, the results of which revealed no evidence of osteomyelitis. (Tr. 125).

X-rays of Plaintiff's right foot, taken on August 9, 2000, revealed "changes of arthrodesis[3] of the tibiotalar joint with advanced degenerative changes of the subtalar joint." (Tr. 122). There was, however, no evidence of osteomyelitis. *Id.*

On October 30, 2000, Plaintiff participated in a bone imaging examination, the results of which revealed evidence of severe degenerative changes, but no evidence of osteoarthritis. (Tr. 114).

On September 11, 2001, Plaintiff reported that his medication was providing him with relief from his ankle pain. (Tr. 98). He also reported that he walked and performed yard work for exercise. (Tr. 99).

On March 11, 2002, Plaintiff was examined at the Battle Creek Veterans Administration Medical Facility. (Tr. 92). Plaintiff reported that he was experiencing "increasing pain in his left leg." An examination of Plaintiff's left knee revealed thickening of the synovium,

---

[2] Osteomyelitis refers to inflammation of a bone and its marrow. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* O-119 (Matthew Bender) (1996).

[3] Arthrodesis refers to the surgical procedure of making a joint immovable by causing the surfaces of the bones to fuse or grow together. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* A-388 (Matthew Bender) (1996).

as well as "some" pain in the kneecap. *Id.* X-rays of Plaintiff's knees revealed moderate degenerative changes with no evidence of bony injury. (Tr. 94).

On May 29, 2002, Plaintiff completed a questionnaire regarding his activities. (Tr. 64-67). Plaintiff reported that he cooks, vacuums, dusts, washes dishes, performs minor household repairs, shops, drives, reads, watches television, and plays cards. *Id.* Plaintiff also reported that he "like[s] to shoot firearms and some bow & arrow." (Tr. 66).

X-rays of Plaintiff's right foot, taken on May 30, 2002, revealed soft tissue calcification and degenerative changes related to Plaintiff's prior injury and surgeries. (Tr. 219).

On June 3, 2002, Plaintiff's wife completed a questionnaire regarding Plaintiff's activities. (Tr. 71-76). She reported that Plaintiff drives, cooks, cleans house, reads, watches television, goes out to eat with his friends, fixes things, makes small woodworking projects, visits with the neighbors, and cares for his personal needs. (Tr. 71-74). She also reported that Plaintiff shoots firearms, hunts, and occasionally goes fishing. (Tr. 74).

On June 17, 2002, Plaintiff underwent surgery to remove the lower end of his right tibia and fibula. (Tr. 212, 275-78). The results of a June 27, 2002 examination were unremarkable with no evidence of neurovascular deficits. (Tr. 276).

On September 3, 2002, Plaintiff was examined at the Battle Creek Veterans Administration Medical Facility. (Tr. 281). Plaintiff reported that he "wanted help with depression." Specifically, Plaintiff reported that he had been charged with "molesting a child" which caused him to be "stripped of his authority to be a member of the mounted deputies in his county." Plaintiff reported that this action constituted a "big blow to his self-esteem." Plaintiff expressed "a great deal of guilt about his behavior" which he described as "a one time event." *Id.* Plaintiff was diagnosed

with adjustment disorder with depressed mood (moderate to severe depression). (Tr. 269). Plaintiff's then current GAF score was rated as 55[4] and his highest GAF score within the last year was rated as 95.[5] *Id.*

Physical therapy treatment notes dated September 5, 2002, indicate that Plaintiff "isn't on any restrictions." (Tr. 272). Plaintiff also reported that he has not taken pain medication on a regular basis and "has not allowed pain to limit his activity." *Id.* As part of his therapy, Plaintiff was provided with a TENS unit. (Tr. 271). Plaintiff reported that the unit was "beneficial" in reducing his pain. *Id.* On September 9, 2002, Plaintiff reported that he was feeling "a lot better." (Tr. 270).

On January 16, 2003, Plaintiff was examined at the Battle Creek Veterans Administration Medical Health Clinic. (Tr. 255-56). Plaintiff did not appear anxious or depressed. (Tr. 255). The results of a mental status examination were unremarkable and Plaintiff reported that he was doing "much better" following a recent adjustment in his medication regimen. (Tr. 255-56).

X-rays of Plaintiff's right foot, taken on April 22, 2003, revealed "mature bone fusion" across the tibiotalar joint (which was transfixed with three screws). (Tr. 218). The examination also revealed moderate osteoarthritis of the subtalar joint and mild degenerative changes. *Id.*

---

[4] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 55 indicates "Moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

[5] A GAF score of 95 indicates "Superior functioning in a wide range of activities, life's problems never seem to get out of hand, is sought out by others because of his or her many positive qualities. No symptoms." DSM-IV at 34.

On May 7, 2003, Plaintiff participated in a bone scan, the results of which revealed "no abnormality at the right ankle joint, but show[ed] intense increased blood pool and delayed activity at the right talo-calcaneal joint." (Tr. 217).

On May 9, 2003, Plaintiff was examined at a Veterans Administration facility. (Tr. 318-19). Plaintiff reported that he was experiencing pain in his right foot. The doctor informed Plaintiff that his pain may be mechanical in nature given that "he doesn't have the support of the fibular head" following his June 2002 surgery. The doctor reported that Plaintiff would be receiving an orthotic designed to provide his foot with better support. *Id.*

On May 23, 2003, Plaintiff was examined at the Battle Creek Veterans Administration Medical Health Clinic. (Tr. 254). Plaintiff reported that he was "good, doing really well." *Id.*

On June 12, 2003, Plaintiff received a custom fabricated ankle foot orthosis. (Tr. 337-48). After "a few minor adjustments" Plaintiff reported that the device enabled him to ambulate comfortably. (Tr. 336).

X-rays of Plaintiff's right ankle, taken on August 11, 2003, revealed no evidence of soft tissue or acute osseous abnormalities. (Tr. 384-86).

On October 15, 2003, Plaintiff was examined by Dr. Herbert Kaufer. (Tr. 284-85). Plaintiff reported that he was experiencing increased pain in his right foot. (Tr. 284). An examination of Plaintiff's subtalar joint revealed "severe" degenerative joint disease. (Tr. 285). However, an examination of Plaintiff's right ankle revealed "excellent ankle fusion position" without evidence of edema, swelling, or irritation. (Tr. 284-85). Plaintiff's pedal pulses were "excellent" and the doctor characterized Plaintiff's right ankle as "solid." (Tr. 285).

8

At the administrative hearing, Plaintiff testified regarding his activity level prior to the expiration of his insured status. Plaintiff reported that on a typical day he would read, watch television, make small woodworking projects, wash dishes, help clean the house, spend time with his wife, and manage household finances. (Tr. 428-30). Plaintiff reported that he participated in a church group 4 or 5 nights weekly. (Tr. 430). Plaintiff also testified that he was able to do a "little" deer hunting at that time. (Tr. 432-33).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[6] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[6]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff suffered from the following severe impairments: (1) status post gunshot wound to the right ankle, with post traumatic arthritis; and (2) degenerative disc disease of the lumbosacral spine.[7] (Tr. 15). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ concluded that as of the date Plaintiff's insured status expired Plaintiff retained the ability to perform his past relevant work as a security guard supervisor. (Tr. 16). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning

---

[7] The ALJ also found that Plaintiff suffered from depression and degenerative joint disease of the knees, but that Plaintiff did not suffer such impairments until after the expiration of his insured status. (Tr. 15).

10

capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that as of the date Plaintiff's insured status expired, Plaintiff retained the capacity to perform light work activities subject to the following restrictions: (1) he must be able to sit or stand at his option and (2) he cannot crawl, squat, kneel, or climb. (Tr. 16). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

Plaintiff testified that he worked as a security supervisor from March 1991 through March 1993. (Tr. 56, 422). Plaintiff described his duties in this position as (1) supervising ten security guards; (2) maintaining logs on the employees and security guards; (3) determining the work schedules for the other security guards; (4) fingerprinting employees; (5) maintaining records; (6) processing the payroll; and (7) hiring and firing security guards. (Tr. 59). According to Plaintiff, this position required him to walk for two hours, stand for one hour, and sit for seven hours each day. Plaintiff further reported that this position required "almost no lifting." Specifically, he reported that he frequently lifted items weighing less than 10 pounds and "once in a while" would have to lift boxes of typing paper (which weighed no more than 20 pounds). *Id.*

The vocational expert testified that if limited to the extent recognized by the ALJ's RFC determination, Plaintiff would still be able to perform his past relevant work as a security guard supervisor. (Tr. 451-52). Accordingly, the ALJ determined that Plaintiff was not disabled.

a.  The ALJ Properly Evaluated the Medical Evidence

Plaintiff asserts that the various Veterans Administration doctors who treated him should be considered treating physicians. Plaintiff then asserts that the ALJ was obligated to comply with Sixth Circuit authority which mandates that he "give good reasons for not giving weight to a treating physician." Plaintiff also asserts that "an ALJ cannot substitute his own impression of the claimant's condition for uncontroverted medical opinion" of a treating physician. Plaintiff asserts that compliance with this authority leads to the conclusion that he was disabled prior to the date his insured status expired.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ is not bound by conclusory statements, particularly when unsupported by detailed objective criteria and documentation. *See Cohen*, 964 F.2d at 528. The ALJ need not defer to an opinion contradicted by substantial medical evidence. *See Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). Finally, when according less than controlling weight to the opinion of a treating physician, the ALJ must specifically articulate his

rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-45 (6th Cir. 2004).

As Defendant correctly observes, Plaintiff has failed to identify any opinion articulated by a treating physician (or anybody else for that matter) which is in any way inconsistent with the ALJ's RFC determination. Moreover, the Court has reviewed the medical record and likewise discerns no opinion which is inconsistent with the ALJ's RFC determination. Plaintiff's argument, therefore, that the ALJ failed to comply with the treating physician rule is misplaced. As the record reveals, the ALJ discussed at length the medical evidence and articulated his analysis thereof consistent with the aforementioned standard. Thus, the Court finds that the ALJ properly evaluated the medical evidence in this matter.

b. The ALJ Properly Discounted Plaintiff's Subjective Allegations

The ALJ concluded that Plaintiff's assertions, "with respect to the extent and severity of his impairments and resulting functional limitations prior to September 30, 2001, is not fully credible." (Tr. 16). Plaintiff asserts that the ALJ improperly discounted his subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has

established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

It is not disputed that Plaintiff suffers from severe impairments. However, as the ALJ properly concluded, the evidence does not support Plaintiff's contention that he was disabled prior to the expiration of his insured status. First, as the ALJ correctly observed, Plaintiff's condition did not significantly deteriorate until after he underwent surgery in June 2002, more than eight months after his insured status expired. As discussed above, prior to this procedure Plaintiff participated in a wide range of activities which are inconsistent with the conclusion that he was disabled. These activities included woodworking, performing household repairs, performing household duties, hunting, fishing, shooting firearms, reading, going out to eat, visiting with friends and neighbors, and participating as a member of his county's mounted deputy patrol.

While the Court is not unsympathetic to Plaintiff's present condition, the evidence fails to support his contention that he was disabled prior to the expiration of his insured status. Accordingly, the Court finds that there exists substantial evidence to support the ALJ's credibility determination.

c. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether in light of the limitations identified by the ALJ's RFC determination, Plaintiff could perform any of his past relevant work, to which the vocational expert answered in the affirmative. Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon her response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  May 4, 2006                               /s/ Ellen S. Carmody
                                                 ELLEN S. CARMODY
                                                 United States Magistrate Judge